UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| YANITZEN SANCHEZ | : | Hon. Joseph H. Rodriguez |
| | : | Civil Action No. 16-4580 |
| Plaintiff, | : | MEMORANDUM OPINION & ORDER |
| v. | : | |
| PLAZA AZTECA SICKLERVILLE, INC., RUBEN LEON, MARIANBELI SAEZ, JOHN DOES 1-3, | : | |
| | : | |
| Defendants. | : | |

This matter is before the Court on Defendants' motion for partial summary judgment. Oral argument was held on May 2, 2017 and the record of that proceeding is incorporated in the Court's decision. For the reasons discussed on the record, and those provided below, the Defendants' motion will be denied.

## Background

Plaintiff Yanitzen Sanchez filed the Complaint in this matter against her former employer alleging violation of the Fair Labor Standards Act, 29 U.S.C. § 201, ("FLSA"), (Count I) and the New Jersey Wage & Hour Law, N.J. Stat. Ann. § 34:11-56a, ("NJWHL"), (Count II). Plaintiff also asserted a common law claim for unjust enrichment, breach of contract, and violation of good faith and fair dealing (Count III). Defendants Plaza Azteca

1

Sicklerville, Inc., its President Ruben Leon, and Vice President of Operations Mariangeli Saez seek summary judgment on Counts I and II and a declaration that Plaintiff's termination was not a breach of contract or other duties as stated in Count III.

## Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a). Thus, the Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under

the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

Discussion

Plaintiff was hired as a chef for Defendants' restaurant in January of 2015 with a promised salary of $80,000 and her employment was terminated in January of 2016. She argues that Defendants failed to pay her the full amount of wages due and failed to pay her overtime compensation to which she was entitled. She also argues that her termination without cause was in breach of contract and the duty of good faith and fair dealing and unjustly enriched Defendants. Defendants argue that as a salaried

executive whose primary duties were managerial, Plaintiff was exempt from the overtime provisions of the FLSA and NJWHL.

The parties entered into an employment contract signed on February 18, 2015. (Saez Cert., Ex. A.) The contract describes Plaintiff's responsibilities as those of "the kitchen equivalent of a CEO," "responsible for all of the daily operations of the kitchen." (Id.) It further provides:

> He or she must maintain control of the kitchen and the people who work there so that the food that leaves the kitchen meets the requirements. The Executive Chef serves as a role model and mentor to the chefs, and must maintain a professional appearance and demeanor at all times.
>
> The Corp chef will train and manage kitchen personnel and supervise/coordinate all related culinary activities; estimate food consumption and requisition or purchase food; select and develop recipes; standardize production recipes to ensure consistent quality; establish presentation technique and quality standards; plan and price menus; ensure proper equipment operation/maintenance; and ensure proper safety and sanitation in kitchen. The executive chef may cook selected items or for select occasions. The executive chef may oversee special catering events and may also offer culinary instruction and or demonstrate culinary techniques. The executive chef directly supervises kitchen personnel with responsibility for hiring, discipline, performance reviews and initiating pay increases.

(Id.) The contract also required Plaintiff to "interview, select, train, supervise, counsel and discipline all employees in the department," and to "provide, develop, train, and maintain a professional work force." (Id.)

5

For compensation, Plaintiff was to receive a salary at a rate of $80,000 per year, paid bi-weekly. The contract states, "the payment will be made gross and treated as an independent contractor salary," and notes that "you will be responsible for any withholdings due." (Id.)[1] The contract does not limit Defendants' ability to terminate Plaintiff, with or without cause, nor did it guarantee any specific time period with which Plaintiff would remain under Defendants' employ.

The FLSA provides that employers are required to pay overtime compensation to employees who work over forty hours per work week. However, 29 U.S.C. § 213(a)(1) states that any person employed in a bona fide executive, administrative, or professional capacity is exempt from this mandatory overtime compensation provision. To qualify as exempt, the employee must satisfy the criteria set forth in 29 C.F.R. § 541.100. Pursuant to the Regulations, an executive employee is an employee:

> (1) Compensated on a salary basis pursuant to § 541.600 at a rate per week of not less than the 40th percentile of weekly earnings of full-time nonhourly workers in the lowest-wage Census Region (or 84 percent of that amount per week, if employed in American Samoa by employers other than the Federal government), exclusive of board, lodging or other facilities. Beginning January 1, 2020, and every three years thereafter, the Secretary shall update the required salary amount pursuant to § 541.607;

---

[1] Plaintiff alleges that Defendants "improperly characterized" her as an independent contractor. (Compl. ¶ 23.)

> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100.

The Regulations set forth a qualitative, not quantitative, test for whether an employee is a bona fide executive. Under this multi-factor quantitative test,[2] "primary duty" does not connote the most time-intensive of an employee's functions but instead refers to the "principal, main, major or most important" duty performed by the employee, regardless of how much time she devotes to it. *See* 29 C.F.R. § 541.700(a). "A job title alone is insufficient to establish the exempt status of an employee. The exempt or

---

[2] These factors include:

> [T]he relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700

7

nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part." 29 C.F.R. § 541.2.

The Regulations define "management duties" as follows.

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

The burden of proving the FLSA exemption is on the emploryer, "and if the record is unclear as to some exemption requirement, the employer will be held not to have satisfied its burden." Martin v. Cooper Elec. Supply Co., 940 F2d 896, 900 (3d Cir. 1991). See also Lawrence v. City of Phildelphia, 527 F.3d 299, 310 (3d Cir. 2008) ("FLSA exemptions should be construed narrowly, that is, against the employer.").

Here, Plaintiff's contract states her position was "the kitchen equivalent of a CEO," and that she was responsible for "all of the daily operations of the kitchen. [Plaintiff] must maintain control of the kitchen and the people who work there." Further, the contract provides that Plaintiff was responsible for training and managing kitchen personnel and supervising all related culinary activities. The contract states, "[t]he executive chef directly supervises kitchen personnel with responsibility for hiring, discipline, performance reviews, and initiating pay raises."

However, Plaintiff has submitted a Certification stating that she was not paid in accordance with her employment contract and did not perform the duties outlined by the contract. Specifically, she certifies:

> I did not set or adjust rates of pay and hours of work of employees.
>
> I did not maintain production or sales records.
>
> I did not discipline employees.
>
> Defendants instructed me what type of food supplies could be used, bought, stocked and sold.
>
> I did not handle employee complaints and grievances.
>
> I did not plan or control the budget.

(Sanchez Cert. ¶ 15-20.)

As such, a genuine issue of material fact exists within the record presently before the Court, and summary judgment must be denied.

The movants have not established that Plaintiff's primary duty was management of the restaurant's kitchen or that Plaintiff customarily and regularly directed the work of two or more other employees. There is no evidence to rebut or impeach Plaintiff's sworn statement that she did not have the authority to hire or fire other employees or otherwise change their status. Accordingly, Defendants have not met their initial burden on summary judgment of establishing that they are entitled to judgment as a matter of law on any of the three claims.

<u>Conclusion</u>

For these reasons,

IT IS ORDERED this 20th day of September, 2017 that Defendants' motion for summary judgment [14] is hereby DENIED.

<u>/s/ Joseph H. Rodriguez</u>
JOSEPH H. RODRIGUEZ
USDJ